```
        IN THE UNITED STATES DISTRICT COURT FOR THE
              EASTERN DISTRICT OF OKLAHOMA
```

KEVIN OWENS,                       )
                                   )
            Plaintiff,             )
                                   )
v.                                 )    Case No. CIV-12-515-JHP-KEW
                                   )
CAROLYN W. COLVIN, Acting          )
Commissioner of Social             )
Security Administration,           )
                                   )
            Defendant.             )

## REPORT AND RECOMMENDATION

Plaintiff Kevin Owens (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on May 16, 1964 and was 47 years old at the time of the ALJ's latest decision. Claimant completed his high school education and one semester of college. Claimant has worked in the past as a material handler and cutting machine tender. Claimant alleges an inability to work beginning August 15, 2005 due to limitations resulting from back pain, methamphetamine abuse, and

3

depression.

**Procedural History**

On October 9, 2009, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. After an administrative hearing, the Administrative Law Judge ("ALJ") denied Claimant's request for benefits. The decision was reversed by the Appeals Council and remanded for further evidence and evaluation.

On July 18, 2011, a second administrative hearing was held by video before ALJ Osley F. Deramus, with Claimant in Fort Smith, Arkansas and the ALJ in McAlester, Oklahoma. On August 8, 2011, the ALJ issued a second unfavorable decision on Claimant's applications. The Appeals Council denied review of the ALJ's decision on October 26, 2012. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe

impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform less than a full range of light work.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to fully and fairly develop the record; (2) making an improper RFC determination; (3) engaging in an inadequate and improper credibility assessment; and (4) making erroneous findings at step five.

**Duty to Develop the Record**

In his decision, the ALJ determined Claimant suffered from the severe impairments of herniated discs at L2-3 and L5-S1 vertebral levels of the lumbar spine, depression, anxiety, passive dependent personality disorder, borderline intellectual functioning, and methamphetamine abuse. (Tr. 24). He also found Claimant retained the RFC to perform light work except that he can only occasionally stoop, crouch, crawl, kneel, and balance. He can occasionally climb stairs, but can never climb ladders. Due to psychologically based factors, Claimant has some limitations, but is able to understand, remember, and carry out simple instructions, can sustain concentration and persistence for extended periods, and can respond appropriately to changes in the workplace. The ALJ

5

concluded that Claimant should avoid exposure to the public, and should have limited contact with co-workers and supervisors. (Tr. 26). After consultation with a vocational expert, the ALJ determined Claimant could perform the representative job of price marker, which the ALJ determined existed in sufficient numbers in the state and national economies. (Tr. 33).

Claimant contends that the ALJ erred in failing to obtain additional evidence regarding his back impairments in accordance with the directives of the Appeals Council. In its Order, the Appeals Council directed the ALJ to

> Obtain additional evidence concerning the claimant's back impairment and mental impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence . . . . The additional evidence may include, if warranted and available, consultative physical and mental examinations with psychological testing and medical source statements about what the claimant can still do despite the impairments.

(Tr. 108).

Since the Appeals Council denied review of the ALJ's most recent decision, this Court presumes it considered that the ALJ complied with the directives of its prior remand Order. Indeed, this Court's review function is not to enforce the orders of the Appeals Council but rather to determine whether the ALJ's findings are supported by the law and substantial evidence.

On January 4, 2007, Claimant underwent a consultative

6

examination by Dr. Mohammed Quadeer. Dr. Quadeer found Claimant suffered from low back pain. He determined Claimant's cervical spine at C6-7 was tender with full range of motion. The thoracic-lumbar spine was non-tender with full range of motion. The lumbar-sacral spine was tender at L4-5 with full range of motion associated with pain and muscle spasms. No scoliosis, increased kyphosis, or increased lordosis was noted. Straight leg raising was negative bilaterally and in both sitting and supine positions. Claimant's gait was found to be safe and stable with appropriate speed, he did not use an assistive device, had not identifiable muscle atrophy, heel/toe walking was normal, and his tandem gait was within normal limits. (Tr. 307).

Dr. Quadeer concluded that Claimant suffered from chronic back pain, probably due to a herniated disc at the lumbar level but the exact number was not known as no documented report was before the examiner and Claimant did not remember. Claimant had physical therapy and other treatment but no surgery. Dr. Quadeer also found Claimant suffered from pain going into the left lower thigh, suggestive of radiculopathy, anxiety and depression. (Tr. 307).

On June 19, 2008, Claimant was again evaluated by a consultative examiner, Dr. George H. Tompkins. Dr. Tompkins concluded Claimant "suffers from severe, intractable leg and back pain, which is poorly controlled, which is exacerbated by chronic

depression and anxiety." (Tr. 330). The ALJ rejected Dr. Tompkins' conclusions, finding "his report contains no objective findings to support this conclusion" with "no further physical treating or examining notes." (Tr. 28).

Generally, the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. Branam v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987). A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." Id. quoting Henrie v. United States Dep't of Health & Human Services, 13 F.3d 359, 360-61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." Id. quoting Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996). This duty exists even when a claimant is represented by counsel. Baca v. Dept. of Health & Human Services, 5 F.3d 476, 480 (10th Cir. 1993). The court, however, is not required to act as a claimant's advocate. Henrie, 13 F.3d at 361.

The duty to develop the record extends to ordering consultative

examinations and testing where required.  Consultative examinations are used to "secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision."  20 C.F.R. § 416.919a(2). Normally, a consultative examination is required if

> (1) The additional evidence needed is not contained in the records of your medical sources;
>
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, . . .
>
> (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources;
>
> (4) A conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved, and we are unable to do so by recontacting your medical source; or
>
> (5) There is an indication of a change in your condition that is likely to affect your ability to work.
>
> 20 C.F.R. § 416.909a(2)(b).

None of these conditions warranted the ALJ to obtain a further consultative examination.  The ALJ properly rejected Dr. Tompkins' conclusory report which did not jibe with the objective medical record.  The record indicates Claimant received no treatment for his condition after June of 2005. (Tr. 28, 368-78).  Dr. Tompkins' dire conclusions are not supported by the substantial evidence in the record.  This Court concludes that the ALJ properly and

adequately developed the record to enable him to make a decision as to Claimant's disability.

## RFC Determination

Claimant contends the ALJ erroneously determined he could perform light work by standing and/or walking for six hours in an 8 hour workday and could lift/carry 20 pounds occasionally and 10 pounds frequently. Because of his back condition, Claimant argues he "patently" could not stand for six hours in a day. Dr. Quadeer's report found Claimant had full range of motion at all levels of his spine. (Tr. 307). Additionally, Claimant's treating physician, Dr. Robert Thompson, released Claimant with the sole restriction of a lifting limit up to 50 pounds after reaching maximum medical improvement in January of 2003. (Tr. 353-55). The medical record does not support Claimant's assertion of further physical limitation in his RFC.

Claimant also asserts the ALJ failed to properly assess the severity of his mental limitations in reaching his RFC. On June 17, 2008, Dr. Patricia Walz conducted a Mental Diagnostic and Psychological Evaluation of Claimant. In administering the Beck Depression Inventory, Dr. Walz found Claimant to be in the moderately depressed range with symptoms in the severe range. The Beck Anxiety Inventory revealed Claimant to be in the mildly

anxious range with symptoms in the moderate range. (Tr. 340). Dr. Walz diagnosed Claimant with Depression Secondary to his chronic back pain, a history of methamphetamine abuse in brief remission, and a gambling addiction. He suffered from a passive-dependent personality disorder and registered a current GAF of 50-55. Dr. Walz found Claimant's mental impairments did not interfere with his ability to drive or to interact with friends. His social skills were found to be adequate and his speech was clear and intelligible. His intellectual functioning was thought to be in the low average range where he would experience difficulty with extremely complex tasks. No problems were noted in his ability to concentrate or in his persistence in completing tasks. His speed of information processing was average. (Tr. 341).

Dr. Walz also completed a Residual Functional Capacity Secondary to Mental Impairments form on Claimant. She found Claimant was severely limited in the areas of relating to co-workers, interacting with supervisors, dealing with work stresses, working in coordination or proximity to others without being distracted by them, completing a normal workday and workweek, performing without an unreasonable number or length of rest periods, and demonstrating reliability. In areas of social functioning, Dr. Walz found Claimant to be severely impaired in

11

behaving in an emotionally stable manner, dealing with the general public, getting along with co-workers or peers without distracting them or exhibiting behavioral extremes and maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness. (Tr. 323-44). Claimant was found to be extremely limited in the ability to accept instructions and respond appropriately to criticism from supervisors. (Tr. 344).

On May 12, 2011, Claimant was underwent a psychological evaluation by Dr. Robert L. Spray, Jr. Dr. Spray determined Claimant attained full scale IQ of 73 on the Wechsler Adult Intelligence Scale-IV which he found to be in the borderline range. Claimant's Verbal Comprehension Index and General Ability Index were in the mild mental retarded range, his Perceptual Reasoning Index was in the borderline range, and his Working Memory and Processing Speed Indexes were in the low average range. (Tr. 381). In assessing Claimant's personality functioning, Dr. Spray indicated an invalid MMPI-2 profile resulted from evidence of inconsistent responding as well as a marked, exaggerated report of symptoms. (Tr. 382).

Dr. Spray also completed a Medical Source Statement (Mental). He found Claimant was moderately limited in the areas of understanding and remembering complex instructions, carrying out

12

complex instructions, the ability to make judgments on complex work-related decisions with borderline intelligence and limited verbal reasoning skills. (Tr. 385). He also found Claimant to be markedly limited in the areas of interacting appropriately with the public, interacting appropriately with supervisors, and interacting appropriately with co-workers. (Tr. 386). He also found Claimant's meth use contributed to his episodes of paranoid ideations. Id.

The ALJ gave "little weight" to Dr. Walz's opinion, finding the degree of limitation she assessed was supported by her examination report in the area of the ability to attend and sustain concentration. Dr. Walz found Claimant was moderately limited in this area. (Tr. 30). The ALJ also gave Dr. Spray's opinion "little weight," finding the degree of limitation he assessed was not supported by the medical evidence of record available, including Dr. Spray's own assessment. Id.

The ALJ's findings are internally inconsistent on the issue of mental impairment. While he rejects both opinions from state agency professionals who assessed Claimant, he maintained some limitations in Claimant's mental and social functioning in arriving at his RFC. No other evidence of mental impairment appears in the record. It can only then be presumed that the ALJ imposed his own

13

medical opinion in arriving at the minimal level of mental limitation in his RFC, which is not permitted. Miller v. Chater, 99 F.3d 972, 977 (10th Cir. 1996). On remand, the ALJ shall reassess Claimant's mental impairments in light of the medical record rather than his own assessment of Claimant's condition.

## Credibility Evaluation

Claimant also contends that ALJ improperly considered the credibility of Claimant's testimony in light of its consistency with the ALJ's RFC assessment. This Court has previously noted that this analysis is faulty as the ALJ must first assess Claimant's testimony before arriving at an RFC. On remand, the ALJ shall consider Claimant's testimony as a part of the evidentiary record before reaching his RFC conclusions.

## Step Five

Claimant contends the ALJ's hypothetical questioning of the vocational expert employed in this case did not include all of the limitations which should have been contained in the ALJ's RFC. As this Court has found, the ALJ improperly assessed the medical opinion evidence with regard to Claimant's mental impairments. The ALJ shall re-examine the vocational expert after re-evaluating his RFC in light of the medical record as it pertains to Claimant's mental status.

**Conclusion**

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 12th day of February, 2014.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE